ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} This appeal is before the Court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 11.1.
 {¶ 2} Plaintiff-appellant Martina Tucker ("Martina") appeals from a decision of the Common Pleas Court that granted defendant-appellee Lakeshore Chevrolet, Inc.'s ("Lakeshore") motion for summary judgment. Upon review, we conclude that there are no genuine issues of material fact and that Lakeshore is entitled to judgment as a matter of law on Martina's claims. Accordingly, we affirm the trial court's decision.
 {¶ 3} A review of the record reveals the following facts: On November 22, 2000, Martina and her cousin, Monica Dean ("Monica"), went to Lakeshore because Monica wanted to buy a car. Martina had recently bought a car for herself at Lakeshore and was familiar with the dealership. George Fullilove ("Fullilove") was the saleperson and Tony Briscoe ("Briscoe") was the manager.
 {¶ 4} Martina agreed to help Monica and wrote two checks, one in the amount of $200 and one in the amount of $1,800, as part of the down payment for the car. Martina states that she told Fullilove that she did not have any money in her account but that he promised her that the checks would not be cashed, were only needed to "show a sale on the books" and would only be held until Monica came back to pay for the car. Martina also signed an "Easy Pay Security Agreement" that guaranteed payment of the $1,800 by Equifax Check Services if the check was dishonored.
 {¶ 5} On December 22, 2000, Monica returned to the dealership to pay the balance owed on the car. Martina states that Fullilove called her after Monica arrived at the dealership and told her she could place a stop payment order on the $1,800 check. Martina states that the next day she received another phone call from Fullilove telling her that Monica had refused to pay the $1,800 balance because of a dispute over the terms of the purchase price. Martina also received a call from Monica who stated that she had refused to pay the balance because Lakeshore refused to honor a previously advertised rebate. Monica also told Martina that she had tried to return the car, but Lakeshore refused to accept it.
 {¶ 6} On February 23, 2001, Martina received a certified letter from Lakeshore of its intent to pursue legal action against her for the bad check unless she paid the $1,800 in ten days. Martina did not respond to the letter.
 {¶ 7} On April 30, 2001, Martina received a notice from the Euclid City Prosecutor's Office requesting her to appear on May 8, 2001 to answer the complaint of "stop payment check to Lakeshore Chevrolet amount $1800 dated 12/22/00." On May 8, 2001, Martina went to the prosecutor's office to defend herself and told the prosecutor that she did not have the car and that Lakeshore was not supposed to cash her check.
 {¶ 8} On July 5, 2001, a criminal complaint charging Martina with passing a bad check was filed in Euclid Municipal Court based upon a sworn complaint signed by Briscoe. On August 6, 2001, Martina was arrested by the Euclid Police Department on the complaint.
 {¶ 9} On August 23, 2001, Martina appeared in court represented by counsel. The court's journal entry indicates that Martina waived her right to a preliminary hearing and that "the court finds that a crime has been committed and there is probable cause to hold the defendant for trial pursuant to indictment by the Grand Jury."
 {¶ 10} On September 26, 2001, Martina was indicted by the Cuyahoga County Grand Jury for passing a bad check in violation of R.C. 2913.11 and grand theft of a motor vehicle in violation of R.C. 2913.02.
 {¶ 11} On December 13, 2001, the charges against Martina were dismissed. The journal entry dated December 19, 2001 stated that "Defendant paid restitution in full to the victim."
 {¶ 12} On October 18, 2002, Martina filed this action against Lakeshore, Briscoe, and Fullilove alleging malicious prosecution. On July 10, 2003, Lakeshore filed a motion for summary judgment arguing that the indictment by the Cuyahoga County Grand Jury established probable cause for the criminal charges initiated against Martina. On September 10, 2003, the trial court granted Lakeshore's motion for summary judgment on the following grounds:
 {¶ 13} "The Court finds that plaintiff has not and can not produce evidence demonstrating that plaintiff's indictment was secured as a result of perjured testimony, or otherwise significant irregularities in the grand jury's proceedings. Moreover, plaintiff has failed to demonstrate that the indictment was not the result of the prosecutor's uncontrolled discretion."
 {¶ 14} It is from this judgment that Martina timely appeals and raises one assignment of error for our review.
 {¶ 15} "I. The trial court committed reversible error by granting the defendants'-appellees' motion for summary judgment."
 {¶ 16} In this assignment of error, Martina claims that the trial court erred in granting summary judgment in favor of Lakeshore because there is a question as to whether Lakeshore had probable cause to file a criminal complaint against her. Specifically, Martina claims that Lakeshore withheld important information from the prosecutor. Lakeshore maintains that Martina has not provided sufficient evidence to support her allegations of perjury or irregularity in the Grand Jury proceedings.
 {¶ 17} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Cleveland CitySchools (1997), 122 Ohio App.3d 378, citing Dupler v. MansfieldJournal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 18} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 19} The burden is on the movant to show that no genuine issue of material fact exists. Id.
Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 20} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in Lakeshore's favor was appropriate.
 {¶ 21} Martina's complaint alleges that Lakeshore maliciously, intentionally, and in bad faith instituted criminal proceedings of theft and passing bad checks against her without probable cause. To establish the tort of malicious prosecution, a plaintiff must prove the following elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. Criss v. Springfield Twp. (1990), 56 Ohio St.3d 82.
 {¶ 22} In an action for malicious prosecution, the lack of probable cause is the gist of the action. Melonowski v. Judy
(1921), 102 Ohio St. 153. Probable cause does not depend on whether the claimant was guilty of the crime charged. Waller v.Fox (Oct. 6, 1982), Hamilton App. No. 810568. Rather, the question is whether the accusor had probable cause to believe that the claimant was guilty. Id. The person instituting the criminal proceeding is not bound to have evidence sufficient to insure a conviction but is required only to have evidence sufficient to justify an honest belief of the guilt of the accused. Epling v. Pacific Intermountain Exp. Co. (1977),55 Ohio App.2d 59, 62.
 {¶ 23} An indictment creates a rebuttable presumption of probable cause which is only overcome by the plaintiff's production of substantial evidence that "the return of the indictment resulted from perjured testimony or that the Grand Jury proceedings were otherwise significantly irregular." Deomav. City of Shaker Heights (1990), 68 Ohio App.3d 72, citingEpling v. Express Co., supra. Here, Martina was indicted by the Grand Jury for grand theft motor vehicle and passing a bad check. Since the Grand Jury proceeding transcript is not in the record on appeal, there is no evidence that the Grand Jury proceeding was irregular. Accordingly, we look only to see if Martina met her burden of producing "substantial evidence" that the indictment resulted from perjured testimony.
 {¶ 24} In support of her claim that Lakeshore lied and/or concealed material facts from the prosecutors that would have warranted the charges brought against her, Martina claims that Lakeshore never disclosed to the prosecutor that it knew that she was not purchasing the car, did not have possession of the car, and that the check written by her was guaranteed by an "Easy Pay Security Agreement." Martina also claims that Lakeshore never told the prosecutor that Fullilove knew that she did not have money to cover the check, that Fullilove told her the check would not be cashed for 30 days, until Monica came in to pay the balance, and that Fullilove told her to stop payment on the check.
 {¶ 25} We find this evidence insufficient to demonstrate that the indictment resulted from perjured testimony. Briscoe filed a complaint against Martina in the Euclid Municipal Court alleging that Martina "with the purpose to defraud Lakeshore" issued a check "knowing that it would be dishonored, in violation of R.C.2913.11(A)." The undisputed facts show that Martina wrote the check in question, that she stopped payment on it, that she had insufficient funds in the bank at the time she wrote the check, that Monica failed to pay the $1,800 within 30 days after the purchase, which was the condition on which Martina agreed towrite the check, and that Monica retained possession of the car. These facts are sufficient to allege a complaint under R.C.2913.11(A), which provides that "No person, with purpose to defraud, shall issue or transfer or cause to be transferred a check or other negotiable instrument, knowing that it will be dishonored."
 {¶ 26} Although Briscoe's complaint fails to disclose all of the facts surrounding the incident, the prosecutor was aware of Martina's version of the events, since Martina met with the prosecutor almost two months prior to the official charge being brought against her.[1] Accordingly, Martina cannot demonstrate that the institution of charges for passing a bad check was anything but the result of the Euclid prosecutor's uncontrolled discretion. See Robbins v. Fry (1991),72 Ohio App.3d 360, 363. Moreover, Martina cannot demonstrate that the institution of the grand theft motor vehicle was anything but the result of the Cuyahoga County prosecutor's uncontrolled discretion. Briscoe only filed a complaint of passing a bad check. The Grand Jury found the facts to be sufficient to charge Martina with passing a bad check and grand theft motor vehicle.
 {¶ 27} This assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Diane Karpinski, J., concur.
[1] Martina met with the prosecutor on May 8, 2003. The formal charges were brought against her on July 5, 2003.